[No. 16489.  *En Banc.*  November 21, 1921.]

SPOKANE CITY CLUB, *Respondent,* v. UNION TRUST COMPANY et al., *Appellants.*[1]

MORTGAGES (259)—REDEMPTION—ALLOWANCES—POWER TO IMPOSE CONDITIONS ON REDEMPTIONER. Under an agreement between a mortgagee and a holder of second mortgage bonds on the same property, whereby the notes and mortgage owned by the first mortgagee were surrendered to a trust company to be held in escrow, pending purchase of the property by the second mortgage bondholder, and the first mortgage was foreclosed on demand of such bondholder and the property purchased by the trustee, the second mortgage bondholder had no right to have the amount due him included as part of the sum payable on a redemption from the foreclosure sale by a judgment creditor of the mortgagor, since such action would tend to defeat redemption from the foreclosure sale to the possible detriment of the first mortgagee.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered December 23, 1920, upon findings in favor of the plaintiff, in an action to recover an amount paid under protest on redemption from a sheriff's sale of real property, tried to the court.  Affirmed.

*Wakefield & Witherspoon, Wm. C. Meyer,* and *Henry L. Kennan,* for appellants.

*Charles P. Lund* and *Frank T. Post,* for respondent.

BRIDGES, J.—This case involves the right of redemption from a sheriff's sale of real property.  There is practically no dispute concerning the facts.  Prior to March, 1911, the Spokane Club, a corporation, gave to J. P. Graves, of Spokane, its notes in the aggregate sum of $125,000, and secured the payment of them by a mortgage given to Mr. Graves, covering certain real property in Spokane.  After the Spokane Club gave

[1]Reported in 201 Pac. 906.

the Graves' notes and mortgage, it gave to the Spokane & Eastern Trust Company a trust mortgage covering the same property and securing bonds issued or thereafter to be issued. The trust deed or mortgage especially recited that it was junior and subsequent to the Graves' mortgage.

Spokane Lodge, No. 228, B. P. O. Elks became the owner of $7,550 par value of the second mortgage bonds so issued. Ultimately the Spokane Club became financially embarrassed and was unable to pay the Graves' notes when they became due. The Elks lodge, being acquainted with this condition, and being desirous, if possible, of acquiring the property of the Spokane Club, entered into a written agreement with Mr. Graves, which provided that the latter would sell to the former the notes and mortgage so owned by him. The lodge was to make payments of the purchase price in various designated installments. This agreement especially provided that Mr. Graves should surrender into the possession of the Union Trust Company; of Spokane, the notes and mortgage so contracted to be sold, and that the trust company should hold such papers in escrow for the purpose of carrying out the agreement of sale and purchase between Mr. Graves and the Elks lodge. The agreement further provided that, at any time while the lodge was not in default, it might demand of the trust company that it proceed at once to a foreclosure of the mortgage. Subsequently the lodge made the demand, with the result that the trust company foreclosed the mortgage and was the purchaser at the sheriff's sale of the mortgaged lands for the sum of $132,194.77, and the sheriff issued to it his certificate of purchase, subject to redemption as provided by statute.

The Spokane City Club, a corporation, became the owner of a judgment against the Spokane Club, and

thus put itself in position to redeem from the Graves' mortgage foreclosure sale. Before the expiration of the redemption period, it notified the sheriff of Spokane county that, on a certain named date, it would redeem the property so sold. This fact was communicated by the sheriff to the Union Trust Company, which in turn notified the Elks lodge; thereupon that lodge put into the possession of the trust company the second mortgage bonds issued by the Spokane Club, and owned by the lodge, and requested that the trust company add the amount of those bonds, plus the interest thereupon, to the amount necessary to redeem from the certificate of sale held by it. The trust company then notified the sheriff that the amount necessary to be paid for the redemption was the amount which it had paid at the foreclosure sale, with interest and certain expenses, plus $10,834.32, the latter sum being the face and interest of the second mortgage bonds held by it. The sheriff refused to permit the Spokane City Club to redeem unless it paid the whole amount so demanded by the trust company, and, being unable to redeem otherwise, the Spokane City Club paid to the sheriff for redemption the amount due on the certificate of sale, plus the amount due on the second mortgage bonds held by the trust company. This last amount was paid by the Spokane City Club under protest. Although the trust company demanded that the sheriff pay it the full amount of the redemption money, he refused to pay the amount in dispute, being the amount of the face and interest of the second mortgage bonds, but did pay all the remainder of the redemption money, and held in his hands the $10,834.32. The Spokane City Club brought this action against the sheriff and the Union Trust Company to recover that sum, plus interest. There were findings,

conclusions and judgment in favor of the plaintiff, and the defendants have appealed.

Section 594, Rem. Code (P. C. §7909), reads as follows:

"Property sold subject to redemption, as above provided, or any part thereof separately sold, may be redeemed by the following persons, or their successors in interest:—(1) The judgment debtor or his successor in interest, in the whole or any part of the property separately sold.   (2) A creditor having a lien by judgment, decree or mortgage, on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which the property was sold.   The persons mentioned in subdivision two of this section are termed redemptioners."

Section 595, Rem. Code (P. C. § 7910), provides as follows:

"The judgment debtor or his successor in interest, or any redemptioner, may redeem the property at any time within one year after the sale, on paying the amount of the bid, with interest thereon at the rate of eight per cent per annum to the time of redemption, together with the amount of any assessment or taxes which the purchaser or his successor in interest may have paid thereon after purchase, and like interest on such amount; and if the purchaser be also a creditor having a lien by judgment, decree or mortgage, prior to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest."

We are of the opinion that the judgment must be affirmed because, under the agreement between Mr. Graves and the Elks lodge making the Union Trust Company a trustee for the purposes mentioned in the agreement, that company had no right or authority to demand of the redemptioner that it pay the sum due on the bonds issued by the Spokane Club and turned over to it by the Elks lodge.   The power and authority

of the Union Trust Company, as trustee, was created and limited by the agreement between the lodge and Mr. Graves. Appellants contend that the Union Trust Company held the certificate of purchase issued by the sheriff for the use and benefit of the lodge, and that Mr. Graves had no interest in the notes and mortgage held by the trust company, except he had a lien upon them to secure the unpaid purchase price, and that his rights in the notes and mortgage were those of a lien holder and nothing more. We cannot agree with this contention. It is our view that the Union Trust Company held the notes and mortgage as trustee both for the lodge and Mr. Graves. The trustee was bound to recognize the rights of Mr. Graves and its obligations to him under its trust, until such time as Mr. Graves had been fully paid by the Elks lodge. The actual title to the notes and mortgage would be held by Mr. Graves until he was fully paid, at which time the title would vest in the lodge and the trust cease to exist.

The instrument creating the trust and the trustee provided that Mr. Graves assign the notes and mortgage to the trustee for the purpose of carrying out the agreement. The lodge is to pay to the trustee for Mr. Graves a certain sum of money in installments. It further provides that, "time is of the essence of this agreement, and should the lodge at any time fail or neglect to make any payment of principal or interest as and when the same becomes due, after ten days' notice in writing of such failure, then, and in that event, it shall forfeit all rights hereunder, and Mr. Graves shall be entitled to retain all payments made by it as liquidated damages. Upon notice from Mr. Graves the trust company shall thereafter hold title to the said notes and said mortgage, or to any judgment or

decree, or whatsoever form said mortgage shall have taken, or shall hold the property representing the same, in trust, for Mr. Graves without any right, title or interest in the lodge, and upon demand from Mr. Graves it will assign, transfer or convey title thereto to Mr. Graves.'' But should the lodge make all the payments of the purchase price, then the trust company shall surrender such notes and mortgage to. it. Mr. Graves authorizes the lodge, while it is not in default, to demand of the trustee that it foreclose such mortgage.

Under such an instrument the Union Trust Company, as trustee, was acting in the interest, not only of the lodge, but Mr. Graves as well, and, as such, it would not have any authority to do or perform any act detrimental to either the lodge or Mr. Graves, nor any act in violation of the duties imposed upon it by the trust agreement. That agreement, by its words, contemplated that the trust company might foreclose the mortgage and might buy in the property at the sheriff's sale, and that in the event of redemption the money should be paid to Mr. Graves to an amount sufficient to discharge any balance which might be owing to him from the lodge. The interests of the two parties claiming under the trust were necessarily, to some extent, inconsistent, because the whole purpose of Mr. Graves was to get his money, either directly from the lodge or indirectly by redemption, while the lodge was deeply interested in preventing a redemption because that might defeat its expressed desire to acquire the mortgaged property for its own use. If the trustee had authority by virtue of the trust agreement to add to the redemption price the $10,834.32 of the second mortgage bonds, then it would also have had authority to have added the whole amount of such

bonds outstanding, if by chance they had belonged to the Elks lodge, and in this manner the redemption might have been defeated to the possible detriment of Mr. Graves. It is therefore, our view that, when the Union Trust Company took from the lodge the second mortgage bonds and demanded payment of them as a condition for redemption, it was acting not only without authority, but in violation of its trust. The judgment is affirmed.

PARKER, C. J., MACKINTOSH, MAIN, HOLCOMB, TOLMAN, MITCHELL, and HOVEY, JJ., concur.